UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

STEVEN MACKENZIE,

                Petitioner,

                                      Case No. 1:23-cv-77

v.

                                        Hon. Hala Y. Jarbou

BRYAN MORRISON,

                Respondent.

_____/

## OPINION

    This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Steven MacKenzie is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On September 12, 2014, following a four-day jury trial in the Ionia County Circuit Court, Petitioner was convicted of attempted murder, in violation of Mich. Comp. Laws § 750.91.[1] On October 21, 2014, the court sentenced Petitioner to a prison term of 11 to 40 years.

    On January 18, 2023, Petitioner filed his habeas corpus petition raising six grounds for relief, as follows:

    I.      The trial court violated [Petitioner's] substantial rights by withdrawing his nolo contendere plea without his personal consent in violation of MCR 6.310(B)(2)(a).

    II.     Ineffective Assistance of Trial Counsel[—Counsel] failed to inform [Petitioner] of his right to continue with the plea or take the matter to trial pursuant to MCR 6.310(B)(2).

---

[1] Petitioner was also convicted of one count of aggravated domestic assault, in violation of Mich. Comp. Laws § 750.81a(2). Petitioner was sentenced to time served for that conviction and, therefore, is not in custody pursuant to that sentence.

III.    [Petitioner] is entitled to resentencing when the guidelines were scored incorrectly, resulting in a higher range due to constitutionally ineffective assistance of counsel for failing to object to the guidelines.

IV.    [Petitioner] [is] entitled to acquittal because the jury instructions for attempted murder failed to correctly state the elements of the crimes, violating his Constitutional right to due process. Counsel was ineffective for failure to object.

V.    [Petitioner] was denied his Federal and State Due Process Rights when the trial court reversibly erred in wrongly admitting evidence of prior criminal conduct under MCL 768.27b. Also in the trial court allowing introduction of irrelevant and unfairly prejudicial testimony . . . [t]hat painted [Petitioner] as guilty because he hired an expert for over $2,000 to testify on his behalf.

VI.    [Petitioner] received Ineffective Assistance of Counsel in violation of his Sixth Amendment Right to the U.S. Constitution by having his Nolo Contendere Plea withdrawn without his consent. Not having sentencing guidelines properly [e]xplained to him, and not attempting to suppress [Petitioner's] statements. Along with numerous other Ineffective Assistance of Counsel Claims. All have been combined for the sake of time and space. Counsel was further ineffective by fail[ing] to move for a Directed Verdict. Counsel was ineffective for [f]ailing to object to the jury instructions as given. Counsel was ineffective for failing to file a motion to suppress. Appellate Counsel failed to appeal by right in a timely manner.

(Pet., ECF No. 1, PageID.6–7, 9, 11–12, 14.)[2] Respondent contends that Petitioner's grounds for

relief are meritless.[3] (ECF No. 11.) For the following reasons, the Court concludes that Petitioner

---

[2] On September 29, 2023, Petitioner filed a motion to amend his § 2254 petition, describing his proposed amendments as "a few simple Clerical Amendments." (ECF No. 19, PageID.3428 (emphasis in original).) In an order (ECF No. 20) entered on October 16, 2023, the Court gave "Petitioner the benefit of the doubt and accept[ed] his representation that the proposed amendments are simply clerical corrections." (*Id.*, PageID.3433.) The Court, therefore, granted Petitioner leave to amend and noted that it would consider the issues as amended during plenary review. (*Id.*) The Court will discuss the amendments *infra*.

[3] Respondent also contends that habeas ground IV is procedurally defaulted. (ECF No. 11, PageID.228.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.");

has set forth meritorious grounds for federal habeas relief with respect to the following claims: (1) Petitioner was sentenced pursuant to a now-unconstitutional mandatory sentencing guidelines scheme, in violation of *Alleyne v. United States*, 570 U.S. 99 (2013), and *People v. Lockridge*, 870 N.W.2d 520 (Mich. 2015); and (2) appellate counsel was ineffective for failing to raise the Sixth Amendment *Alleyne/Lockridge* issue on direct appeal. The Court, therefore, will grant Petitioner's petition with respect to those claims. The Court will deny Petitioner's petition with respect to all other grounds for relief.

<u>Discussion</u>

## I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> [Petitioner] and the victim were going through a divorce. The victim was staying at the couple's cottage in Clarksville while [Petitioner] was living at their marital home in Lansing. At a hearing, the divorce court determined that the victim could remain in the Lansing home during the pendency of the divorce proceedings and that [Petitioner] had seven to ten days to vacate the Lansing home. The night of that hearing, the victim awoke to [Petitioner] in the bedroom in which she was sleeping at the cottage. [Petitioner] pinned the victim to the bed and began to repeatedly twist her head in what she believed to be an attempt to break her neck. [Petitioner] told the victim that they were going to die there and that he could not understand how the victim could say the things about [Petitioner] that she said at the divorce hearing. Eventually, the victim was able to escape and call police.

---

*see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). With regard to the claimed procedural default of habeas ground IV, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claim. With regard to the amendments Petitioner has raised in his motion to amend, however, the Court will consider exhaustion and procedural default *infra* in its discussion of those arguments.

*People v. MacKenzie*, No. 324893, 2016 WL 1680487, at *1 (Mich. Ct. App. Apr. 26, 2016), *vacated by People v. MacKenzie*, 886 N.W.2d 709 (Mich. 2016).

Initially, the parties agreed that Petitioner would plead *nolo contendere* to a charge of assault with intent to commit great bodily harm in exchange for a *Killebrew*[4] agreement sentence of time served. (ECF No. 12-3, PageID.430–431.) At sentencing, however, Petitioner's soon-to-be ex-wife asked the court to reject the plea agreement and sentence Petitioner to prison. (*Id.*, PageID.456.) She represented that Petitioner "becomes violent and dangerous when he is suicidal." (*Id.*) Mrs. MacKenzie indicated that as part of the divorce proceedings, she had received a copy of a psychological report that "sent chills down [her] spine." (*Id.*, PageID.458.) She suggested that Petitioner had lied to the psychologist and that if Petitioner had been honest, the psychologist would have concluded that Petitioner "becomes physically violent and aggressive when he's suicidal." (*Id.*)

When the court asked counsel to respond to Mrs. MacKenzie's statement, Petitioner's counsel explicitly stated that if the court "[did] not follow the *Killebrew*, [Petitioner would] seek to have a full trial on this matter." (*Id.*, PageID.462.) The trial court stated that "in light of the circumstances of this offense, [it could not] in good conscience[] proceed with the agreement that had been reached." (*Id.*, PageID.463.) Petitioner's plea was, therefore, withdrawn. (*Id.*)

Jury selection for Petitioner's trial occurred on September 8, 2014. (Trial Tr. I, ECF No. 12-4.) Over the course of three days, the jury heard testimony from numerous witnesses, including several law enforcement officers, Mrs. MacKenzie's neighbor, an emergency room doctor and

---

[4] *People v. Killebrew*, 330 N.W.2d 834 (Mich. 1982). In *Killebrew*, the Michigan Supreme Court held that if a plea agreement includes a nonbinding recommended sentence, the trial judge may accept the guilty plea but refuse to be bound by the recommended sentence. *Id.* at 841. However, if the judge does not accept the recommended sentence, the defendant must be given the opportunity to withdraw his guilty plea. *Id.* at 836.

nurse who treated Mrs. MacKenzie, a paramedic who responded to the incident, Mrs. MacKenzie, the MacKenzies' children, friends of the MacKenzies, a forensic scientist with the Michigan State Police, a research microscopist, and Petitioner himself. (Trial Tr. I, II, & III, ECF Nos. 12-4, 12-5, 12-6.) On September 12, 2014, after almost five hours of deliberation, the jury reached a guilty verdict. (Trial Tr. IV, ECF No. 12-7, PageID.1091.) Petitioner appeared before the trial court for sentencing on October 21, 2014. (ECF No. 12-8.)

Petitioner, with the assistance of appellate counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising the following claims for relief: (1) the trial court violated Michigan Court Rule 6.310(B)(2)(a) by withdrawing Petitioner's *nolo contendere* plea without Petitioner's personal consent; and (2) counsel rendered ineffective assistance by having Petitioner's plea withdrawn without Petitioner's consent, not properly explaining the sentencing guidelines to Petitioner, and not attempting to have Petitioner's statements to law enforcements suppressed. (ECF No. 13-2, PageID.1510.) The court of appeals affirmed Petitioner's conviction and sentence on April 26, 2016. *See MacKenzie*, 2016 WL 1680487, at *1.

Petitioner subsequently filed an application for leave to appeal to the Michigan Supreme Court. In lieu of granting leave to appeal, the supreme court vacated the part of the court of appeals' judgment addressing Petitioner's claim of ineffective assistance of counsel "with regard to counsel's handling of the withdrawal of [Petitioner's] *nolo contendere* plea." *People v. MacKenzie*, 886 N.W.2d 709, 709 (Mich. 2016). The supreme court remanded the matter with instructions for the trial court to conduct an evidentiary hearing pursuant to *People v. Ginther*, 212 N.W.2d 922 (1973). *Id.*

The trial court conducted the *Ginther* hearing on February 24, 2017. Gregory Crockett and Steven Howard, both of whom served as Petitioner's attorney during various stages of the criminal

proceedings, testified, as did Lori Bonn, a probation/parole agent with the MDOC. (ECF Nos. 12-10, 12-11.)

Following testimony, the trial court noted that it was "unable to find ineffective assistance of counsel." (*Id.*, PageID.1247.) The court acknowledged that the "court rule was not specifically adhered to," and that it would be "taking note in that regard and [would] be modifying [its] practices accordingly." (*Id.*) The court recognized that it did not "state an amount of [time] on the record" during the initial sentencing proceedings. (*Id.*) However, defense counsel was aware that Petitioner would not accept anything "short of being able to have the benefit of that agreement, which entailed him leaving the courthouse that day." (*Id.*, PageID.1247–1248.)

Following the *Ginther* hearing, the matter was returned to the court of appeals. In an opinion entered on July 18, 2017, the court of appeals affirmed Petitioner's conviction and sentence, concluding that, even assuming that counsel acted deficiently by not asking the trial court what sentence it would have given Petitioner, Petitioner did not suffer any prejudice because he would "not have accepted any plea which required him to serve additional jail time." *People v. MacKenzie*, No. 324893, 2017 WL 3043873, at *6 (Mich. Ct. App. July 18, 2017). On April 3, 2018, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *See People v. MacKenzie*, 908 N.W.2d 914 (Mich. 2018).

Before the supreme court denied Petitioner's application for leave to appeal, Petitioner returned to the trial court to file a motion for relief from judgment pursuant to Michigan Court Rule 6.500. (ECF No. 12-12.) Petitioner raised numerous grounds for relief, including numerous claims of ineffective assistance of trial and appellate counsel, insufficient evidence, erroneous jury instructions, and trial court error regarding admission of evidence. (*Id.*) The trial court denied Petitioner's Rule 6.500 motion in an order entered on November 15, 2019. (ECF No. 13-1.)

Petitioner subsequently filed a delayed application for leave to appeal to the Michigan Court of Appeals. In an order entered on November 13, 2020, the court of appeals granted Petitioner's delayed application in part, "limited to the issues concerning instructional error and restitution." (ECF No. 13-13, PageID.1696.) The court of appeals denied the delayed application in all other regards because Petitioner had "failed to establish that the trial court erred in denying the motion for relief from judgment." (*Id.*) In an opinion issued on June 16, 2022, the court of appeals affirmed the denial of relief regarding instructional error and restitution. *See People v. MacKenzie*, No. 354250, 2022 WL 2181992, at *1 (Mich. Ct. App. June 16, 2022). The supreme court denied Petitioner's application for leave to appeal on November 30, 2022. *See People v. MacKenzie*, 981 N.W.2d 498 (Mich. 2022). This § 2254 petition followed.

## II.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This

standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

8

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.     Discussion

#### A.     Ground I—Withdrawal of *Nolo Contendere* Plea

As his first ground for relief, Petitioner contends that the trial court violated Michigan

Court Rule 6.301(B)(2)(a) by not obtaining Petitioner's consent before withdrawing his *nolo*

*contendere* plea, under the *Killebrew* agreement, to assault with intent to commit great bodily

harm. (Pet., ECF No. 1, PageID.6.) Petitioner faults the trial court for not articulating what the

proposed sentence might be and for not counseling Petitioner "about what the repercussions of the

plea withdrawal might mean." (*Id.*)

The court rule at issue states that a defendant is entitled to withdraw a plea if "the plea

involves an agreement for a sentence for a specified term or within a specified range, and the court

states that it is unable to follow the agreement; the trial court shall then state the sentence it intends

to impose, and provide the defendant the opportunity to affirm or withdraw the plea." *See* Mich.

Ct. R. 6.310(B)(2)(a). On direct appeal, the Michigan Court of Appeals noted that "[t]here [was]

no dispute that the trial court did not strictly follow MCR 6.310(B)(2) at the sentencing hearing."

*MacKenzie*, 2017 WL 3043873, at *5. The court of appeals noted that there could be no dispute

over that fact because the trial court failed to state the sentence it intended to impose and provide

Petitioner the opportunity to affirm or withdraw his plea. *Id.* Instead, the plea was withdrawn by

the court itself.

Nevertheless, Petitioner's claim that the trial court erred by not following Michigan Court

Rule 6.310(B)(2)(a) is not cognizable on federal habeas review. "[A] federal court may issue the

writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C.

§ 2254(a)). Whether the trial court adhered to Rule 6.310(B)(2)(a) is a matter of state law, and the

federal courts have no power, under habeas review, to intervene on the basis of an error of state

law. *See id.*; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mingo v. Michigan*, No. 5:06-cv-33, 2007 WL 3346464, at *8 (W.D. Mich. Nov. 7, 2007) (setting forth that claims of error under Michigan Court Rule 6.310 do not state grounds for federal habeas corpus relief). "A habeas court may not grant relief on the basis of state law governing the taking or withdrawal of pleas." *See Doyle v. Barrett*, No. 2:17-cv-52, 2019 WL 3068787, at *6 (W.D. Mich. June 12, 2019) (citing *Riggins v. McMackin*, 935 F.2d 790, 794–95 (6th Cir. 1991)), *report and recommendation adopted by* 2019 WL 3066534 (W.D. Mich. July 12, 2019). Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

### B.  Ground III—Incorrect Scoring of Sentencing Guidelines

As habeas ground III, Petitioner contends that he is entitled to resentencing because the guidelines were scored incorrectly, resulting in a higher range. (Pet., ECF No. 1, PageID.9.) Petitioner specifically takes issue with the scoring of Offense Variables (OVs) 6, 7, and 10. (ECF No. 2, PageID.47.) According to Petitioner, these OVs were erroneously scored because no evidence was admitted at trial to support scoring these OVs at any level other than zero. (*Id.*) Petitioner suggests that scoring these OVs at zero would result in his guidelines being lowered to 27 to 45 months, making his "sentence of 11 years to be a departure from the guidelines." (*Id.*) Petitioner faults counsel for only objecting to the scoring of OV 6 and not OVs 7 and 10. (*Id.*, PageID.45.) The Court considers Petitioner's underlying claim regarding the scoring of the OVs below and will consider the related ineffective assistance of counsel claim *infra* in Part III.

Petitioner raised his challenge to the scoring of the OVs in his Rule 6.500 motion, and the trial court rejected it, stating:

> [Petitioner] claims that OV 6, the intent to kill or injure another individual, was improperly scored as no testimony at trial showed any intent to kill the victim. This is contrary to the findings of the [j]ury and this Court's recollection of the testimony of the victim. The [j]ury convicted [Petitioner] of attempted murder, which shows that it determined [Petitioner] did, in fact, have the intent to kill or injure another

11

individual. While it is controverted by [Petitioner], it was not improper for the Court to score 25 points to OV 6.

[Petitioner] also claims that this Court abused its discretion by scoring 50 points for OV 7, meaning that he treated the victim with sadism, torture, or excessive brutality designed to substantially increase fear and anxiety in a victim during the offense. He alleges that there was no evidence or testimony that would support the contention that he engaged in conduct designed to substantially increase fear and anxiety in the victim. This Court disagrees. [Petitioner] entered the bedroom during the night when the victim was sleeping, pinned her down in the bed, told her she was going to die there that night[,] and tried to kill her by twisting her head and neck to the point that the victim testified it was apparent to her he was trying to break her neck.

[Petitioner] also challenges the assessment of points on OV 10. [Petitioner] does not develop this argument, however, as he merely references this in one sentence indicating that in no manner was Mrs. MacKenzie exploited because of a vulnerability. This Court finds that it properly scored OV 10.

(ECF No. 13-1, PageID.1451–1452.)

As an initial matter, claims concerning the improper application of, or departures from, sentencing guidelines are state law claims that are typically not cognizable in federal habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Here, however, Petitioner suggests that the trial court erred by relying upon inaccurate information when imposing Petitioner's sentence. (ECF No. 2, PageID.44–47.)

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the

sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner casts his challenge as an "inaccurate information" argument, but he does not identify any "false" information upon which the trial court relied when imposing sentence. He offers, in the alternative, a suggestion that there was "no factual basis" for the assessment of points under the three challenged OVs. But the judge explained the facts upon which she relied when scoring the variables and there is really no constitutional "sufficiency of the evidence" standard that applies to sentencing.

In the context of sentencing, whether or not the evidence preponderated or was "sufficient" to demonstrate particular facts is not a constitutional issue. The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United*

*States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir.2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[5] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof ." *Id*. at 92 n.8.[6]

In *United States v. Watts*, 519 U.S. 148, 156 (1997), the Supreme Court noted that proof by a preponderance of the evidence at sentencing would satisfy due process, but the Court did not say that due process requires it. Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required. Thus, *Watts* was

---

[5] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Haymond*, 588 U.S. 634, 645 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . ."). The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt. The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne*, when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions. None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences. The import of that distinction is explained below.

[6] Even the term "burden of proof" can be misleading. As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence." *Id*. at 695 n.20. Generally, the Constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt." There are times, however, where the Constitution permits the placement of the burden of production and persuasion on the defendant—for example, with regard to affirmative defenses. It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

not an attempt to establish the bottom limit of constitutional propriety; instead, it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[7] Put simply, Petitioner cannot show that the evidence supporting the scoring of the sentencing guidelines OVs was constitutionally insufficient.

The crux of Petitioner's scoring argument is his assertion that the trial court improperly relied upon judge-found facts to score the OVs when the facts used to determine his minimum sentence under Michigan law could only be found by the jury. (ECF No. 2, PageID.47.) In support of his argument, Petitioner relies upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See United States v. Booker*, 543 U.S. 220, 232 (2005) (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Specifically, in *Alleyne*, the Supreme Court concluded

---

[7] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the Due Process Clause, but because anything lower than "more likely than not" is not really persuasive at all.

that "any fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 103.

Two years later, in 2015—after Petitioner was sentenced, but while the conviction and sentence were on appeal—the Michigan Supreme Court held that, pursuant to *Alleyne*, the state's sentencing guideline scheme violated the Sixth Amendment because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Michigan Supreme Court's remedy was to sever and strike the mandatory component of the guidelines and render the guidelines advisory only. *See id.* at 520–21 (citing *Booker*, 543 U.S. at 264–65).

In 2018, the Sixth Circuit announced its agreement with the supreme court's analysis in *Lockridge*. *See Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2019). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Id.* at 714. The court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111–12). Thus, "mandatory minimum sentences may only be increased on the basis of facts found by a jury or admitted by a criminal defendant." *Id.* at 712.

In *Lockridge*, the Michigan Supreme Court made the holding applicable to cases still "pending on direct review." 870 N.W.2d at 523. The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were

not subject to an upward departure." *Id.* at 522 (footnote omitted). If a remand were appropriate, the supreme court called upon the trial court, on remand, to determine if it "would have imposed a materially different sentence but for the unconstitutional restraint." *Id.* at 524 (citing *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005)). If the trial court answers that question in the affirmative, re-sentencing is required. *See id.*

Here, Petitioner was sentenced on October 21, 2014, after *Alleyne* was decided but before *Lockridge* was issued. (ECF No. 12-8.) At the time of Petitioner's sentencing, the applicability of *Alleyne* in the Michigan courts was guided by *People v. Herron*, 845 N.W.2d 533 (Mich. Ct. App. 2013), in which the court of appeals concluded that *Alleyne* had no impact upon judicial factfinding in scoring the sentencing guidelines to produce a minimum range for an indeterminate sentence where the maximum is set by statute. *Id.* at 539. *Herron* guided that determination until July 29, 2015, when *Lockridge* was decided. At the time *Lockridge* was decided, Petitioner's appeal of his conviction and sentence was still pending on direct review.

Although Petitioner's appeal was still pending on direct review at the time *Lockridge* was decided, he did not raise his *Alleyne*/*Lockridge* argument until he filed his motion for relief from judgment pursuant to Rule 6.500. (ECF No. 12-12, PageID.1285–1288.) Despite asserting his argument throughout his Rule 6.500 proceedings, the record reflects that at no time did any state court address this argument. As set forth *supra*, the trial court denied Petitioner's claim on the basis that the OVs in question were scored correctly.

Given that Petitioner was sentenced after *Alleyne* was decided and before *Lockridge* made Michigan's sentencing guidelines advisory, he appears to be part of the limited group of defendants identified by the *Lockridge* court. The trial court scored OV 6 consistently with *Alleyne* because,

17

by finding Petitioner guilty of attempted murder, the jury necessarily determined that Petitioner demonstrated the requisite intent, the fact that supported the court's scoring of OV 6.[8]

The same is not true with regard to OV 7 or OV 10. Nothing in the record before the Court suggests that the jury would have found facts relevant to the scoring of OVs 7 and 10 in order to find Petitioner guilty of attempted murder. Moreover, Petitioner was not subjected to an upward departure. At sentencing, the trial court announced that Petitioner's minimum guidelines range called for 108 to 180 months, "a range from 9-15 years." (ECF No. 12-8, PageID.1122.) Petitioner was sentenced to a minimum of 11 years, squarely within that range. Petitioner suggests that if OVs 7 and 10 were all scored at zero, his maximum minimum guidelines sentence would have been less than 11 years. Mich. Comp. Laws § 777.62.

Given this background, it is apparent that Petitioner is entitled to relief with respect to his Sixth Amendment *Alleyne/Lockridge* claim. At no time has the trial court considered whether it would impose the same or different sentence under the now-advisory sentencing guidelines. The Court notes that "[t]he United States Supreme Court has not clearly established whether a defendant sentenced under an unconstitutional sentencing scheme is entitled to a full re-sentencing or only a *Crosby* hearing." *Morrell v. Wardens*, 12 F.4th 626, 632 (6th Cir. 2021) (citing cases).

---

[8] The OV 6 score was proper if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." Mich. Comp. Laws § 777.36(1)(b). To be found guilty of an "attempt" offense, the jury must find that the offender "intended to commit" the underlying crime. *See* Mich. Model Crim. J. Instr. 9.1 Attempt. The necessary intent to commit first degree murder is an intent "to kill;" the necessary intent to commit second degree murder is an intent "to kill [the] victim, or defendant intended to do great bodily harm to [the] victim, or defendant knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of [his / her] actions." *See* Mich. Model Crim. J. Instr. Element Chart—First-degree Premeditated and Second-degree Murder. The jury's determination that Petitioner was guilty of attempted murder, therefore, necessarily included the determination that he had the intent required to score OV 6 at 25 points.

Nevertheless, Petitioner's situation is substantially identical to the one presented to the Sixth Circuit in *Robinson*, where the Sixth Circuit concluded that Robinson was entitled to a conditional grant of habeas relief with respect to his Sixth Amendment sentencing claim. *Robinson*, 901 F.3d at 718. The *Robinson* court, therefore, remanded the matter to the district court with instructions that it "remand to the state sentencing court for sentencing proceedings consistent with this opinion and the Constitution." *Id.*

In sum, Petitioner was sentenced under a now-unconstitutional mandatory guidelines scheme, and he is entitled to either a full re-sentencing or a *Crosby* hearing. The Court, therefore, will grant Petitioner's § 2254 petition with respect to habeas ground III—his Sixth Amendment sentencing claim. The Court advises Petitioner, however, that the grant of habeas relief does not automatically mean that he will receive a lower minimum sentence, as the trial court may determine that it would have imposed the same sentence—or even a higher sentence—under the now-advisory sentencing guidelines. Petitioner, however, will have the opportunity to challenge the scoring of the OVs under those guidelines during either a full re-sentencing or a *Crosby* hearing.

### C.      Ground IV—Erroneous Jury Instructions

As his fourth ground for relief, Petitioner contends that his due process rights were violated because the jury instructions for attempted murder "failed to correctly state the elements of the crimes." (Pet., ECF No. 1, PageID.11.) Petitioner also asserts that counsel was ineffective for failing to object to the instructions as given. (*Id.*) The Court considers the underlying due process claim below and will consider the related ineffective assistance claim *infra*.

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). Typically, a claim

that a trial court gave an improper jury instruction or failed to give a requested instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson*, 431 U.S. at 155; *see also Estelle v. McGuire*, 502 U.S. at 62, 75 (1991) (concluding that erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Estelle*, 502 U.S. at 75.

In his brief supporting his § 2254 petition, Petitioner states that attempted murder "is a crime distinct from, and mutually exclusive to, the far more commonly seen crime of assault with intent to commit murder." (ECF No. 2, PageID.51.) Petitioner avers that the jury was not told that "if the acts in question would constitute assault with intent to commit murder, then a defendant cannot be guilty of attempted murder." (*Id.*) According to Petitioner, the trial court omitted the following element from the instructions regarding attempted murder: "that the attempt be by 'poisoning, drowning, or strangling another person, or by any means not constituting the crime of assault with intent to commit murder.'" (*Id.*, PageID.52.)

Petitioner is correct that the trial court omitted that statement from the final jury instructions. In those instructions, the trial court instructed the jury, with respect to attempted murder, as follows:

First, that the defendant intended to commit murder which is defined as a) the defendant intended to kill Connie MacKenzie or he knowingly created a very high

20

risk of death or great bodily harm knowing that death or such harm would likely be the result of his actions and b) that the defendant intended to cause the death of Connie MacKenzie or to have Connie MacKenzie die as a result of injuries caused by the defendant.

Second, that the defendant took some action toward committing the alleged crime but failed to complete the crime. It is not enough to prove that the defendant made preparations for committing the crime. Things like planning the crime or arranging how it will be committed are just preparations. They do not qualify as an attempt. In order to qualify as an attempt the action must go beyond mere preparation to the point where the crime would have been completed if it had not been interrupted by outside circumstances.

(Trial Tr. IV, ECF No. 12-7, PageID.1083.)

Petitioner raised this claim in his Rule 6.500 motion, and the state courts rejected it. As noted above, the court of appeals partially granted Petitioner's delayed application for leave to appeal with respect to the issue of instructional error. First, the court of appeals concluded that Petitioner had waived any challenges to the jury instructions because when the trial court asked counsel if there was anything they wanted to make a note of regarding the instructions, Petitioner's counsel responded, "No, I think we're fine, your Honor." *MacKenzie*, 2022 WL 2181992, at *3. The court of appeals also "reject[ed] [Petitioner's] all-purpose use of ineffective assistance of counsel to enable review of the instructional error on collateral review." *Id.* The court of appeals concluded further that Petitioner had not demonstrated good cause or actual prejudice to sustain relief on his claim. Specifically, the court of appeals wrote:

Under MCR 6.508(D)(3), "[t]he court may waive the 'good cause' requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime." Therefore, [Petitioner's] failure to establish good cause is not necessarily fatal to his request for relief from judgment under MCR 6.500 *et seq.* But the trial record provides no support for the argument "that the defendant is innocent of the crime" of attempted murder. Indeed, the record of the trial contains strong evidence that [Petitioner] tried to kill his estranged wife by strangling her, which is an act that falls within the heartland of the crime of attempted murder. *See* MCL 750.91 (proscribing "attempt to commit the crime of murder by . . . strangling another person"). Indeed, as we explained in our first unpublished opinion on direct appeal, [Petitioner] told a police officer on the night of incident "that he had placed his hands on the victim's throat and choked her."

Thus, we conclude that [Petitioner's] failure to show good cause for failing to raise the instructional error on direct appeal bars his effort to assert the claim on collateral review under MCR 6.500 *et seq. See* MCR 6.508(D)(3)(a).

Beyond [Petitioner's] inability to establish "good cause," we conclude that his effort to raise the instructional error on collateral review under MCR 6.500 *et seq.*, is foreclosed by [Petitioner's] inability to demonstrate "actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3)(b). To establish "actual prejudice," [Petitioner] must show that, "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal[.]" MCR 6.508(D)(3)(b)(i)(A). As we have already explained, the trial record contains strong evidence that [Petitioner] tried to kill his estranged wife by strangling her. Accordingly, had the jury been properly instructed on the crime of attempted murder, the jury almost certainly would have returned a guilty verdict against defendant on that charge. Consequently, [Petitioner] has failed to establish "actual prejudice," as required by MCR 6.508(D)(3)(B) to proceed with his claim for relief from judgment predicated upon instructional error.

*MacKenzie*, 2022 WL 2181992, at *4.

Petitioner merely repeats the arguments he raised in the court of appeals and fails to meet the difficult standard set forth in *Henderson*. Upon review of the record, the Court concludes that—for the very reasons identified by the court of appeals—there is nothing to suggest that the jury instruction with which Petitioner takes issue resulted in a trial so unfair that it denied Petitioner due process. During the trial, Trooper Sysko testified that Petitioner told him on the night of the incident that he had tried to choke his now ex-wife. (Trial Tr. I, ECF No. 12-4, PageID.570.) A paramedic who responded testified that Mrs. MacKenzie said that she was having difficulty breathing. (Trial Tr. II, ECF No. 12-5, PageID.656.) Petitioner's now ex-wife testified that when the assault began, Petitioner "started twisting [her] head and [her] neck," asserting pressure like he was trying to break her neck. (*Id.*, PageID.676.) She also testified that Petitioner choked her. (*Id.*, PageID.678.) On cross-examination, Petitioner's counsel asked his now ex-wife if she was "saying that [she] never told Trooper Sysko that Steven tried to choke you." (Trial Tr. III, ECF No. 126-, PageID.826.) In response, Mrs. MacKenzie said: "Yeah, I did tell him, yes. I believe he asked me that question and I responded, yes, just like I did with the 911 operator because for a

brief period of time he did choke me." (*Id.*) Petitioner's now ex-wife also noted that when she was interviewed by Detective Clute, she clarified that "[she] did get choked but that wasn't the primary method that he was using to kill me. He did that for just a brief period of time. So when people were asking me, did he choke you, the answer was yes." (*Id.*, PageID.830.)

In light of the record, Petitioner has failed to demonstrate that the court of appeals' determination regarding the attempted murder jury instruction was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to the due process aspect of habeas ground IV.

### D.     Ground V—Evidentiary Issues

In habeas ground V, Petitioner avers that the trial court violated his due process rights by "wrongly admitting evidence of prior criminal conduct under MCL 768.27B." (Pet., ECF No. 1, PageID.12.) Specifically, Petitioner takes issue with the admission of "prior acts of domestic violence that occurred within five years of the instant offense." (*Id.*, PageID.13.) Petitioner also asserts that the trial court erred by allowing evidence that Petitioner had paid over $2,000.00 for an expert witness to testify on his behalf. (*Id.*, PageID.12–13.)

#### 1.     Admission of Prior Acts of Domestic Violence

Petitioner raised his claim regarding admission of prior acts of domestic violence in his Rule 6.500 motion, and the trial court rejected it, noting that "while the alleged prior acts were prejudicial, they were not so prejudicial that it outweighed their probative value and were properly admitted under MCL 768.27B." (ECF No. 13-1, PageID.1451.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine

23

state-court determinations on state-law questions." 502 U.S. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

It is not inconceivable that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. However, "state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, this Court may not grant relief if it would have decided the evidentiary question differently. This Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the prior acts of domestic violence at issue. Indeed, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Thus, because there is no clearly established federal law holding that admission of "prior bad acts" violates due process, Petitioner cannot demonstrate that the state courts' rejection of his claim concerning the admission of prior acts of domestic violence is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to this portion of habeas ground V.

### 2.    Admission of Evidence Regarding Payment of Expert

Petitioner contends that evidence that he paid an expert over $2,000.00 was prejudicial because it painted him as guilty. (ECF No. 2, PageID.61.) Petitioner suggests that this evidence "was a direct attack on [his] character in attempt to gain the jury's sympathy and to imply that somehow the expert was lying because [Petitioner] had to pay the expert to appear and [Petitioner]

must be guilty because he had to pay a large sum of money to have an expert testify in his favor."

(*Id.*)

> Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

> Evidence was elicited during trial that an expert witness was paid $2,000 to testify on his behalf. [Petitioner] claims that this evidence was not properly admitted as it was not relevant, yet had a risk of prejudicing the jury against [Petitioner] as they might infer that because he had to pay someone to testify for him, that expert must be lying for him. However, this Court finds that this testimony was relevant and properly admitted pursuant to MRE 403 as to possible bias of the witness. Further, it was up to the jury to decide what weight to give the evidence. This Court does not find, as [Petitioner] suggests, that this evidence "painted a disturbing and indelible image" of [Petitioner] in the [j]ury's minds as it is reasonable to assume that experts must be fairly compensated for their time to prepare and attend court proceedings.

(ECF No. 13-1, PageID.1451.)

Again, as noted above, to the extent Petitioner asserts that the state courts erred under Michigan law by admitting this evidence, he fails to state a claim upon which habeas relief may be granted. *See Estelle*, 502 U.S. at 67–68; *see also Lewis*, 497 U.S. at 780. Moreover, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the testimony at issue as violative of due process. *See Sanders*, 221 F.3d at 860; *see also Stewart*, 967 F.3d at 538. The fact that Petitioner paid the expert witness over $2,000.00 to testify on his behalf was relevant to the expert's credibility. *See McBurney v. Rapelje*, No. 2:11-cv-12046, 2013 WL 6885148, at *5 (E.D. Mich. Dec. 31, 2013) (citing *Balsley v. LFP, Inc.*, 691 F.3d 747, 763 (6th Cir. 2012)). Thus, because there is no clearly established federal law holding that admission of evidence regarding payment to an expert violates due process, Petitioner cannot demonstrate that the state courts' rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to this portion of habeas ground V.

### 3.      Admission of Police Audio Recording and Will

In his motion to amend his § 2254 petition, Petitioner requested leave to amend habeas ground V to include an assertion that the trial court erred in allowing admission of a police audio recording as well as a will that Petitioner had drafted. (ECF No. 19, PageID.3428.) According to Petitioner, admission of this evidence violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), as well as his right to be free from self-incrimination. (*Id.*)

At trial, Trooper Sysko testified that on the night of the incident, he made contact with Petitioner while Petitioner was sitting on a couch inside the residence. (Trial Tr. I, ECF No. 552.) During a pat-down search, Trooper Sysko found an envelope on Petitioner's person. (*Id.*) The envelope contained a will written and signed by Petitioner. (*Id.*, PageID.553–554.) Trooper Sysko asked Petitioner what had happened, and Petitioner asked to see Community Mental Health. (*Id.*, PageID.554.) Petitioner also kept "reiterating that he just wanted to die. He advised he was tired and he said he had placed his hands on her throat and choked her." (*Id.*, PageID.554–555.) Petitioner told Trooper Sysko he had choked his now ex-wife because she "had made all these lies [in divorce proceedings] and he didn't understand why she would come up with all these lies." (*Id.*, PageID.555.) Trooper Sysko then placed Petitioner in handcuffs and took him out of the residence to a patrol vehicle. (*Id.*, PageID.556.)

Trooper Sysko also testified that he later became aware that Trooper Yeager's "audio recording device had recorded some of the discussion you [he] had" with Petitioner on the night of the incident. (*Id.*, PageID.563.) He characterized the quality of the recording as "sketchy" because the device had been on Troper Yeager's belt pack, and it was "catching all the leather squeaking back and forth." (*Id.*, PageID.564.) The recording was then played for the jury over defense counsel's objection. Trooper Sysko also testified that officers took a photograph of Mrs. MacKenzie holding a ball of hair in her hands, as well as a photograph of the hair in a Ziploc bag.

(*Id.*, PageID.574.) The hair was later collected as evidence, along with family photographs that "had been ripped into small pieces." (*Id.*, PageID.580.)

### a.      Exhaustion and Procedural Default

In its order (ECF No. 20) entered on October 16, 2023, the Court granted Petitioner leave to amend, but noted that if his proposed amendments "represent[ed] substantive changes to the issues he has stated, the amendment implicates exhaustion and statute of limitations issues that suggest undue delay and, possibly, futility of amendment." (*Id.*, PageID.3433.) Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134 138–39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Here, the record reflects that as part of an ineffective assistance of trial counsel claim raised on direct appeal, Petitioner asserted that the statements he made to the officers who responded on the night of the incident were obtained in violation of his Fifth Amendment rights as set forth in *Miranda v. Arizona*, 384 U.S. 436 [1966]." *MacKenzie*, 2016 WL 1680487, at *5.

The court of appeals rejected Petitioner's argument, concluding that *Miranda* was not implicated because Petitioner "was not subject to custodial interrogation." *Id.* at *6. Petitioner reiterated his *Miranda* argument in his *pro per* application for leave to appeal to the Michigan Supreme Court. (ECF No. 13-10, PageID.2987–2991.) Thus, Petitioner fairly presented his *Miranda* argument regarding admission of the statements and the audio recording of such statements to all levels of Michigan's appellate system.

Petitioner, however, did not challenge the admission of the will as evidence until he filed his Rule 6.500 motion. Petitioner again challenged the admission of his statement to police at that time. However, in his Rule 6.500 motion, Petitioner challenged the admission of this evidence as a due process violation, not as a violation of his *Miranda* and Fifth Amendment rights. (*See* ECF No. 12-15, PageID.1365–1369.) The trial court rejected Petitioner's claim, stating:

> [Petitioner] argues that he was denied a fair trial when the 911 tape, knife, hair, torn up pictures from the marital home, the seized will, and his statement to police were admitted at trial. He argues the evidence was more prejudicial than probative, or it had no real relevance to the matter at hand. This Court disagrees. It finds that admission of these items were relevant and admissible under MRE 403. As argued by the People, admission of the 911 tape was a present sense admission from [Petitioner] which provided compelling and probative evidence from which the [j]ury concluded that [Petitioner] intended to kill his wife on the date of the offense.

(ECF No. 13-1, PageID.1454.)

Here, it is clear from the record that Petitioner never challenged the admission of the will on *Miranda* and Fifth Amendment grounds; instead, he challenged the admission of the will as violative of due process. Accordingly, with respect to the will, Petitioner failed to fairly present and exhaust his *Miranda* and Fifth Amendment arguments in the state courts.

As the Sixth Circuit has recognized,

> Exhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists;

> rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust*, 17 F.3d at 160. Here, however, Petitioner has already directly appealed his conviction and sentence. Moreover, he has already filed a motion for relief from judgment pursuant to Rule 6.500. Thus, that device is no longer available for Petitioner to raise his *Miranda* and self-incrimination issues. The Court concludes, therefore, that Petitioner's failure to present these issues in his state court proceedings has resulted in a procedural default of any claim that admission of the will violated his *Miranda* and Fifth Amendment rights.

Because of the procedural default, Petitioner must establish cause for his failure to present the issue to the Michigan Supreme Court and resulting prejudice or by showing that the Court's consideration is necessary to avoid a miscarriage of justice. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)); *see also Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (noting that the court has "the option . . . to excuse a procedural default and review a defaulted claim on the merits if a petitioner demonstrates '(1) cause for the default and actual prejudice, or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice.'") (quoting *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004)).

To show cause sufficient to excuse his failure to assert his *Miranda* and self-incrimination issues regarding the will in the state courts, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issues below. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996). Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner offers nothing to show cause for not raising his *Miranda* and self-incrimination issues regarding the will on either direct appeal or in his Rule 6.500 motion. Therefore, prejudice need not be considered. Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence. For all of the reasons set forth in this opinion, he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (quoting *Schlup*, 513 U.S. at 329), *superseded in other part by statute as recognized in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020). Given the rarity of such evidence, the allegation of actual innocence has been summarily rejected in virtually every case. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

The court must determine whether Petitioner has demonstrated actual innocence by clear and convincing evidence, such that his conviction represents a "fundamental miscarriage of justice." *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner does not attempt to introduce new evidence. Rather, he merely attempts to relitigate evidence that was available at the time of trial. Thus, any possible claim of actual innocence that Petitioner might raise has no merit and cannot justify excusing a procedural default.

In short, relief on Petitioner's *Miranda* and Fifth Amendment arguments with regard to admission of the will is foreclosed by Petitioner's procedural default. The Court, therefore, will not consider whether the admission of the will violated Petitioner's *Miranda* and self-incrimination rights in any way. Accordingly, the Court will consider Petitioner's *Miranda* and Fifth Amendment arguments only as they pertain to admission of Petitioner's statements to police and the recording

of such statements. The Court will also consider whether admission of the statements, recording, and will violated Petitioner's due process rights.

### b.     *Miranda* **and Fifth Amendment Issues**

The Fifth Amendment of the United States Constitution provides in pertinent part that no person 'shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. In *Miranda*, the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. 384 U.S. at 478–79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). These safeguards, however, are required not merely when a suspect is taken into custody, but instead where a suspect in custody is subjected to interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason,* 429 U.S. 492, 494 (1977) (quoting *Miranda,* 384 U.S. at 444). This includes both express questioning and its "functional equivalent . . ., actions on the part of police . . . that the police should know are reasonably likely to elicit an incriminating response from the subject." *Innis*, 446 U.S. at 301; *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993).

A suspect is in custody for *Miranda* purposes when the "suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). Under *Miranda*, the Court must examine: (1) the totality of the circumstances surrounding the limitations on the suspect's freedom, *see Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *Berkemer*, 468 U.S. at 437–38; and

(2) what a reasonable person in the suspect's position would have thought about his freedom to leave knowing the facts available to him, *see Thompson*, 516 U.S. at 112; *Stansbury*, 511 at 323. Four factors to consider when determining whether a person is in custody are: (1) the location of the interview; (2) the length and manner of questioning; (3) whether the individual suffered any restraint on his or her freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions. *See United States v. Luck*, 852 F.3d 615, 621 (6fh Cir. 2017) (quoting *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010)).

In rejecting Petitioner's challenge to admission of the statements he made to officers on the night of the incident, the Michigan Court of Appeals noted that "it is undisputed that police officers did not apprise [Petitioner] of his *Miranda* rights when they questioned him inside his home." *MacKenzie*, 2016 WL 1680487, at *6. The court of appeals acknowledged that the "critical issue" was whether Petitioner was in custody at the time. *Id.* The court of appeals concluded that Petitioner was not subjected to custodial interrogation, stating:

> In this case, [Petitioner] allowed the officers into the cottage, which [Petitioner] had owned with the victim for 25 or 26 years. [Petitioner] was in his own home when police questioned him. [Petitioner] was patted-down for weapons then he sat on a chair and talked to the officers. The questioning was relatively brief and the audio recording of the interview lasted approximately 12 minutes. The officer handed [Petitioner] his glasses. The officer repeated what [Petitioner] told him so as not to use leading questions. [Petitioner] was not handcuffed or restrained in any way during the interview. The officers did not yell at him or use physical force to obtain his statement. They refreshed [Petitioner's] glass of water, which he had been drinking. Additionally, [Petitioner] was allowed to use the restroom. [Petitioner] testified that he was not forced to say anything during the interview. While [Petitioner] testified at trial that an officer told him that he had to speak with the officers, this testimony was not corroborated by the audio recording of the questioning. Moreover, nothing in the record supports that the officers acted in a coercive manner. Given all the circumstances, a reasonable person would not have "felt he [] was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112; 116 S. Ct. 457; 133 L. Ed. 2d 383 (1995). Therefore, because [Petitioner] was not subject to custodial interrogation, *Miranda* was not implicated, *id.*

*MacKenzie*, 2016 WL 1680487, at *6.

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted). Petitioner could rebut that presumption with clear and convincing evidence. He offers no evidence, much less clear and convincing evidence, to rebut the presumption.

Petitioner offers nothing to suggest that the court of appeals' conclusion is contrary to, or an unreasonable application of, clearly established federal law. Interviews that take place in a subject's home are generally considered to be non-custodial. *See Coomer v. Yukins*, 533 F.3d 477, 487 (6th Cir. 2008) ("While an interrogation in one's home is not determinative alone of the custodial inquiry, it is usually indicative of the absence of the isolation inherent in custodial interrogations."). Moreover, much longer interviews than the one Petitioner takes issue with have been held to be non-custodial. *See United States v. Mahan*, 190 F.3d 416, 420 (6th Cir. 1999) ("hour and thirty-five minute[]" interview non-custodial; agent never brandished a gun or handcuffs, interviewed the defendant in an unlocked room, and made no promises to induce cooperation or threats of violence). Here, Petitioner was not handcuffed, confined, or restrained, and he was sitting on a chair during the conversation. *See United States v. Flores*, 193 F. App'x 597, 606 (6th Cir. 2006) (finding non-custodial an interview where the defendant was in his home, not handcuffed, confined, or restrained, and sat on his sofa and had a "casual conversation" with the officer). Moreover, while Petitioner contends that officers told him that he had to answer their questions, this factor alone does not entitle Petitioner to relief. *See United States v. Saylor*, 705 F. App'x 369, 376 (6th Cir. 2017) ("It is undisputed that the officers did not [tell the defendant that he did not need to answer their questions]. Although this factor cuts against the Government, it cannot alone redeem Saylor's cause."); *see also United States v. Panak*, 552 F.3d 462, 467 (6th Cir. 2009) (noting that "[w]e have never held that [this instruction] is a necessary condition (as

34

opposed to a frequently sufficient condition) before officers may question an individual in a non-custodial setting. It would be strange, indeed, to say that a telltale sign of whether an individual must be Mirandized is whether the officer gave the individual one of the *Miranda* warnings—that she need not answer the questions.").

In sum, Petitioner fails to rebut with clear and convincing evidence the presumption deeming correct the court of appeals' factual conclusion that Petitioner was not subjected to custodial interrogation. Thus, because *Miranda* was not implicated, Petitioner has not demonstrated that the state courts' rejection of his claim that his statements and the audio recording were admitted in violation of *Miranda* and the Fifth Amendment was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to this aspect of the amended portion of habeas ground V.

### c.      Due Process Issues

Petitioner also suggests that the admission of his statements to police, the recording of those statements, and the will violated his due process rights. As an initial matter, to the extent Petitioner asserts that the trial court erred under Michigan law by admitting this evidence, he fails to state a claim upon which habeas relief may be granted. *See Estelle*, 502 U.S. at 67–68; *see also Lewis*, 497 U.S. at 780. Moreover, to the extent Petitioner challenges the admission of such evidence as violative of due process, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the evidence at issue. *See Sanders*, 221 F.3d at 860; *see also Stewart*, 967 F.3d at 538. Thus, because there is no clearly established federal law holding that admission of such evidence violates due process, Petitioner cannot demonstrate that the state courts' rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to the due process aspect of this amended portion of habeas ground V.

In sum, Petitioner has not demonstrated that the trial court's admission of any of the challenged testimony and evidence violated his due process rights, and he has not demonstrated that admission of his statements and the recording thereof violated his *Miranda* and Fifth Amendment rights. Moreover, Petitioner has not demonstrated that the state courts' rejection of his evidentiary challenges was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground V.

### E.      Claims of Ineffective Assistance of Trial and Appellate Counsel

In habeas grounds II, III, IV, and VI, Petitioner asserts that trial and appellate counsel rendered ineffective assistance in numerous ways. Specifically, Petitioner faults trial counsel for: (1) withdrawing Petitioner's plea pursuant to the *Killebrew* agreement without Petitioner's consent; (2) failing to explain the sentencing guidelines and object thereto; (3) failing to object to the erroneous jury instructions; (4) failing to file a motion to suppress regarding Petitioner's statements and other evidence; and (5) failing to move for a directed verdict. Petitioner faults appellate counsel for: (1) not raising all of the arguments asserted in his federal habeas petition; (2) waiving appellate oral argument; (3) not filing a motion for a new trial; and (4) not advising Petitioner that he had the right to file a *pro se* supplemental brief with the court of appeals.

### 1.      Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111,

123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his ineffective assistance claims concerning counsel's withdrawal of Petitioner's plea, failure to explain the sentencing guidelines, and failure to move for suppression of Petitioner's statements on direct appeal. *See MacKenzie*, 2016 WL 1680487, at *4; *see also MacKenzie*, 2017 WL 3043837, at *3. In its first opinion, the court of appeals analyzed Petitioner's claims under the following standard:

> To establish ineffective assistance of counsel [Petitioner] must show that counsel rendered deficient performance on an objective standard and that "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v. Trakhtenberg,* 493 Mich. 38, 51; 826 N.W.2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v. Carbin,* 463 Mich. 590, 600; 623 N.W.2d 884 (2001).

*MacKenzie*, 2016 WL 1680487, at *5. The court of appeals used the following standard in its second opinion on direct appeal:

> "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Shaw*,

> 315 Mich. App. at 672. "Effective assistance of counsel is presumed, and [a] defendant bears a heavy burden of proving otherwise. A defendant must also overcome a strong presumption that his counsel's decisions were the result of sound trial strategy." *People v. Johnson*, 315 Mich. App. 163, 174; 889 N.W.2d 513 (2016) (citations and quotation marks omitted). "In demonstrating prejudice, the defendant must show the outcome of the plea process would have been different with competent advice." *People v. Douglas*, 496 Mich. 557, 592; 852 N.W.2d 587 (2014) (citation and quotation marks omitted).

*MacKenzie*, 2017 WL 3043873, at *4.

Petitioner raised the remainder of his ineffective assistance claims in his Rule 6.500 motion. Although the trial court addressed them in its order denying his Rule 6.500 motion, the trial court did not set forth any standard under which it analyzed Petitioner's claims. On appeal from the denial of Petitioner's Rule 6.500 motion, the court of appeals used the following standard:

> "To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich. 38, 51; 826 N.W.2d 136 (2012).

*MacKenzie*, 2022 WL 2181992, at *3.

Although the state courts cited state law as the source of the standard applied, it is identical to the *Strickland* standard set forth above. Moreover, in *Shaw*, the Michigan Court of Appeals identified *Strickland* as the source of the standard. *See Shaw*, 892 N.W.2d at 20. Thus, there is no question here that the state courts applied the correct standard.

The state courts' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly

be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, Petitioner can only overcome the deference afforded state court decisions if the state courts' determinations were based on an unreasonable application of *Strickland* or if the state courts' resolutions were based on unreasonable determinations of the facts. *See* 28 U.S.C. § 2254(d).

## 2.   Ineffective Assistance of Trial Counsel

### d.   Plea Withdrawal

In habeas ground II, Petitioner contends that trial counsel was ineffective for failing to inform Petitioner of "his right to continue with [the] plea or take the matter to trial." (Pet., ECF No. 1, PageID.7.) Petitioner avers that he did not wish to go to trial, despite his "alleged statement that he should not have accepted the plea." (*Id.*, PageID.8.) Petitioner argues that, contrary to the state courts' conclusions, he "would have continued on with the plea if he would have had some idea as to what the sentence would have been." (ECF No. 2, PageID.43.)

Gregory Crockett, one of Petitioner's trial attorneys, was the first witness to testify at the *Ginther* hearing regarding this issue. (ECF No. 12-10, PageID.1182.) Mr. Crockett admitted that during the first sentencing hearing, "when the plea fell apart," he did not make an attempt to "stop the hearing at that point and specifically ask [Petitioner] if he wanted to go to trial." (*Id.*) Mr. Crockett represented that a few days before that hearing, his associate had visited Petitioner in jail, and Petitioner had told the associate that he "wished to withdraw his plea and go to trial." (*Id.*) Although that motion was drafted, it was never filed. (*Id.*, PageID.1183.)

Mr. Crockett testified that although he did not discuss options and sentencing ramifications with Petitioner during that hearing, he had discussed them "more than once" with Petitioner prior to that hearing. (*Id.*, PageID.1184–1185.) Mr. Crockett admitted that at no point during the first sentencing hearing did he bring to the court's attention its responsibility to question Petitioner pursuant to Michigan Court Rule 6.310(B)(2). (*Id.*, PageID.1186.) Counsel testified, however, that he believed that his failure to do so made no difference in the sentencing exposure Petitioner faced. (*Id.*)

Mr. Crockett testified that although he did not bring the matter to the court's attention during the first sentencing hearing, he had spoken to Petitioner about his potential sentencing prior to that time. (*Id.*, PageID.1188.) According to Mr. Crocket, Petitioner was "just a hair away from saying 'No plea deal. I want my trial.'" (*Id.*) Mr. Crockett knew that if Petitioner were not released from jail on the day of sentencing, Petitioner had "no interest in continuing and making—you know, accepting the [c]ourt's sentence." (*Id.*, PageID.1189.)

On cross-examination, Mr. Crockett testified that it is his practice to discuss tentative sentencing scoring and guidelines with his clients "in some detail." (*Id.*, PageID.1192.) He discusses plea offers with his clients. (*Id.*) Mr. Crockett testified that one of the first topics of

41

discussion when conveying a plea offer to a client would involve "the jail or prison exposure this person is looking at." (*Id.*, PageID.1193.) Mr. Crockett acknowledged that he followed these standard and customary procedures with Petitioner prior to his initial sentencing date. (*Id.*, PageID.1194.)

Mr. Crockett testified that the day after his associate informed him that Petitioner wanted to withdraw the plea, he visited Petitioner at the Ionia County Jail and "spent quite a few hours out there talking to him about his case." (*Id.*, PageID.1195.) He told Petitioner about the "hurdles he would have to go through at trial, what would happen if he was found guilty, and also about the aches and pains of being in jail." (*Id.*) Petitioner eventually told Mr. Crockett, "Okay. If I'm going to get out of jail, then I will take the deal." (*Id.*)

Mr. Crockett testified that he talked about the sentencing guidelines with Petitioner "at great length." (*Id.*, PageID.1196.) He said that he "most likely" discussed the guidelines with Petitioner verbally and in writing. (*Id.*, PageID.1197.) Mr. Crockett also discussed the presentence investigation report with Petitioner "in great detail." (*Id.*, PageID.1200.) He discussed the *Killebrew* agreement of time served, including the fact that the sentencing guidelines for assault with intent to do great bodily harm called for 10 to 23 months' imprisonment. (*Id.*, PageID.1201.) However, there was a recommendation that Petitioner be sentenced outside the *Killebrew* agreement to 23 to 120 months. (*Id.*, PageID.1201–1202.) Mr. Crockett testified that Petitioner was "outraged" by the recommendation that the *Killebrew* agreement be exceeded. (*Id.*, PageID.1202.) During that meeting, Petitioner talked about withdrawing his plea. (*Id.*) Overall, Mr. Crockett believed that it "was indeed possible that the deal would fall through, because of the things in this recommendation." (*Id.*, PageID.1203.) Indeed, Petitioner made it clear that he would go to trial if the court decided to exceed the *Killebrew* agreement for time served. (*Id.*,

PageID.1203–1204.) Mr. Crockett acknowledged that subsequently, the same plea offer was made to Petitioner, "except as more prison time." (*Id.*, PageID.1206.) He relayed that offer to Petitioner, and Petitioner rejected it because he "wished to have his trial." (*Id.*, PageID.1207.)

Steven Howard, another of Petitioner's attorneys, testified during the *Ginther* hearing. (*Id.*, PageID.1210.) Mr. Howard testified that he did try to stop the initial sentencing hearing when the plea fell apart. (*Id.*, PageID.1211.) Mr. Howard recalled that he "called out the Judge for agreeing to this, which now, for some reason, doesn't show up in the transcripts." (*Id.*) Mr. Howard "remember[ed] specifically stating to the Judge that the only reason she was doing this was because Lori Kirkhoff [the chief assistant prosecuting attorney] wanted it done." (*Id.*) Mr. Howard testified that he discussed the sentencing guidelines with Petitioner "many times," and that he discussed the final guidelines with Petitioner on the day of sentencing. (*Id.*, PageID.1214.)

On cross-examination, Mr. Howard testified that the deciding factor for Petitioner in taking the plea offer was the inclusion of being sentenced to time served. (*Id.*, PageID.1218.) Up until the inclusion of that sentencing recommendation, Petitioner was claiming innocence and "wanted his trial." (*Id.*) Mr. Howard testified that he reviewed the presentence investigation report with Petitioner. (ECF No. 12-11, PageID.1220.) He and Petitioner were "offended" by the sentencing recommendation for 23 to 120 months contained in that report. (*Id.*, PageID.1222.) Mr. Howard remembered that after the *Killebrew* agreement fell apart, the prosecutor offered the same offer, except with prison time, which Petitioner rejected. (*Id.*, PageID.1224.)

Finally, Lori Bonn, a probation/parole agent with the MDOC, testified at the *Ginther* hearing. (*Id.*, PageID.1230.) She met with Petitioner in the course of preparing the presentence investigation report. (*Id.*, PageID.1231.) Ms. Bonn testified that she recommended that Petitioner be sentenced outside the *Killebrew* recommendation based upon information that came to her

attention during her interview of Petitioner. (*Id.*, PageID.1232.) She noted that during the interview, Petitioner was "fixated on the victim." (*Id.*, PageID.1233.) Petitioner "repeatedly discussed the fact that the victim was out to get him." (*Id.*, PageID.1234.) The interview "caused a great deal of red flags, in terms of the risk that he might continue to pose to the victim, were he to be allowed to remain in the community." (*Id.*) Ms. Bonn testified that at no time during the interview did Petitioner take responsibility "for what he pled to." (*Id.*, PageID.1237–1238.)

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

As set forth *supra*, the trial court held a *Ginther* hearing regarding this issue, at which two of Petitioner's attorneys and an MDOC probation/parole officer testified. The trial court denied Petitioner's ineffective assistance claim, and Petitioner subsequently challenged that decision on

44

appeal. The court of appeals rejected Petitioner's argument, first stating that there was no dispute

that the trial court did not strictly follow Michigan Court Rule 6.310(B)(2) at the sentencing

hearing because it did not state the sentence it intended to impose and did not provide Petitioner

the opportunity to affirm or withdraw his plea. *See MacKenzie*, 2017 WL 3043873, at *5. The

court of appeals went on to note that "[c]ounsel should have been aware of the court rule and

requested that the court adhere to the rule." *Id.* However, "even assuming that counsel's

performance in this respect amounted to deficient performance . . ., [Petitioner could not] show

that the deficient performance resulted in prejudice." *Id.* The court of appeals supported that

conclusion with the following discussion:

> We find our Supreme Court's holding in *Franklin* both instructive and controlling.
> Here, like in *Franklin*, the unique facts and circumstances in this case show that,
> but for counsel's deficiency in failing to raise an objection, the outcome of the plea
> proceeding would not have been different. *Shaw*, 315 Mich. App. at 672.
> Specifically, trial counsel had previously consulted with [Petitioner] and was aware
> that [Petitioner] would not accept anything but the original agreement, under which
> he would serve no further jail time. At the *Ginther* hearing, Crockett testified that
> based on his prior discussions with [Petitioner], he knew that if [Petitioner] was not
> going to get out of jail that day, he would not accept the trial court's sentence.
> Crockett testified that [Petitioner] had said that if the trial court exceeded the
> agreement, then he would go to trial. Crockett could not say that [Petitioner] would
> not have accepted one day or one week of jail time, but he testified that [Petitioner]
> would have definitely withdrawn his plea if the sentence was for one month and the
> probation agent's recommendation was for a minimum sentence of 23 months.
> There is no indication that the trial court would have sentenced [Petitioner] to only
> one day or one week of jail time. Thus, even if Crockett had asked the trial court to
> state the sentence that it intended to impose and consulted with [Petitioner], the
> record shows that the outcome would have been the same—[Petitioner] would have
> rejected the plea and gone to trial. *See Douglas*, 496 Mich. at 592. Furthermore,
> while [Petitioner's] attorney argued at the *Ginther* hearing that [Petitioner] would
> have accepted a reasonable sentence, the trial court found Crockett's testimony to
> be more credible. Crockett testified that [Petitioner] was adamant that he would not
> accept a prison sentence. Moreover, [Petitioner] subsequently rejected offers for
> the same plea, except with prison time. Thus, under the facts and circumstances of
> this case, [Petitioner] has not shown that, but for counsel's failure to request the
> trial court state its intended sentence on the record, the result of the plea process
> would have been different. *Id.*

The record further reveals that after informing trial counsel of his decision not to accept the plea, [Petitioner] never made an inquiry about the possibility of a plea. Thus, as was the case in *Franklin*, [Petitioner] waited until after his trial and after he was sentenced to claim ineffective assistance of counsel. Review of the facts and findings in this case coupled with our review of relevant case law, leads this Court to conclude, in accordance with our Supreme Court's holding in *Franklin*, that we cannot condone the harboring of error as an appellate parachute. *Franklin*, 491 Mich. at 916.

Additionally, we view the holding in *Franklin* to be in accord with the Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156; 132 S. Ct. 1376; 182 L. Ed. 2d 398 (2012). In *Lafler*, the Supreme Court stated, in relevant part, that while "[d]efendants have a Sixth Amendment right to counsel . . . that extends to the plea-bargaining process," "[t]he question for this Court is how to apply *Strickland*'s prejudice test where ineffective assistance of counsel results in a rejection of the plea offer and the defendant is convicted at the ensuing trial. *Lafler*, 566 U.S. at 162–163. To prevail on a claim of ineffective assistance of counsel, a defendant must meet two criteria: first, he must "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that he was not performing as the "'Counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, the defendant must show that deficient performance was prejudicial. *Id.* Determinations of prejudice in the context of plea negotiations are set forth in *Hill v. Lockhart*, 474 U.S. 52, 59; 106 S. Ct. 366; 88 L.Ed.2d 203 (1985) wherein the Court stated: "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Here, [Petitioner] has failed to make a showing that counsel's performance affected the outcome of the plea process. The testimony revealed, and the trial court found that [Petitioner] would not accept any plea which required him to serve any additional jail time. Our review of the record leads us to also conclude that [Petitioner] would not have accepted any plea which required him to serve additional jail time. Therefore, even presuming that counsel was ineffective by failing to inquire of the trial court what sentence it would have given [Petitioner], we cannot find that [Petitioner] suffered prejudice under the facts specific to this case. Accordingly, [Petitioner] is not entitled to relief.

*MacKenzie*, 2017 WL 3043873, at *5–6.

As noted above, "[t]he facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel*, 838 F.3d at 688 (footnote omitted). Petitioner could rebut that presumption with clear and convincing evidence. Here, however, Petitioner offers no evidence, much less clear and convincing evidence, to overcome the

presumption afforded to the state courts' conclusion that Petitioner would not have gone through with any plea agreement that required him to serve additional time in jail or prison. As Agent Bonn testified, at no time during her interview with Petitioner did he appear to take responsibility for what he intended to plead to. Moreover, Crockett and Howard testified that Petitioner maintained his innocence and wanted to go to trial up until the sentencing recommendation for time served was included in the plea offer. Even a few days before the sentencing hearing, Petitioner told Crockett's associate that he wanted to withdraw his plea and take his case to trial. When the same plea offer, with the addition of more prison time, was offered to Petitioner afterwards, Petitioner adamantly rejected that offer. Although Petitioner now claims that he never wanted to withdraw his plea and that he would have continued on with it had he known the sentence the trial court intended to impose, Petitioner offers no evidence to support his assertions. Notably, Petitioner did not testify at the *Ginther* hearing. Given the overwhelming testimony from Crockett, Howard, and Bonn, the court of appeals reasonably determined that Petitioner had not demonstrated a "reasonable probability [that he] would have accepted" the plea offer even if it carried additional jail or prison time.

In sum, Petitioner has not demonstrated that the court of appeals' rejection of this claim of ineffective assistance of trial counsel is contrary to, or an unreasonable application of, *Strickland*, *Lafler*, and *Frye*. Petitioner, therefore, is not entitled to relief with respect to habeas ground II.

### e.      Failure to Properly Explain Sentencing Guidelines

Petitioner also faults trial counsel for failing to properly explain the relevant sentencing guidelines to him. (ECF No. 2-1, PageID.67.) According to Petitioner, "the sentencing guidelines were never explained to him throughout the entire course of the matter." (*Id.*, PageID.67.) Petitioner avers that he was never told that he was facing "potential sentencing guidelines of 108 to 180 months for his minimum sentence [if he was found guilty of attempted murder]. When his

guidelines would be 10 to 23 months if he pled guilty [to] Assault with Intent to Commit Great Bodily Harm Less Than Murder." (*Id.*)

It does not appear that this assertion was explicitly addressed by the state courts on either direct appeal or during Petitioner's Rule 6.500 proceedings. This claim, however, is intertwined with Petitioner's assertion of ineffective assistance during the plea process. Petitioner has simply failed to demonstrate that counsel failed to properly explain the guidelines to him. As set forth *supra*, during the *Ginther* hearing, attorney Crockett testified that he had discussed options and sentencing ramifications with Petitioner "more than once" prior to the hearing where the plea agreement fell apart. (ECF No. 12-10, PageID.1182, 1188.) Crockett testified that it is his practice to discuss tentative sentencing scoring and guidelines with his clients "in some detail." (*Id.*, PageID.1192.) He testified further that one of the first topics of discussion when conveying a plea offer to a client would involve "the jail or prison exposure this person is looking at." (*Id.*, PageID.1193.) Crockett acknowledged that he followed these standard and customary procedures with Petitioner prior to his initial sentencing date. (*Id.*, PageID.1194.) He noted that he talked with Petitioner about the guidelines "at great length" and discussed the presentence investigation report "in great detail." (*Id.*, PageID.1196, 1200.) Attorney Howard also testified that he discussed the sentencing guidelines with Petitioner "many times," and that he discussed the final guidelines with Petitioner on the day of sentencing. (*Id.*, PageID.1214.) Petitioner offers no evidence to rebut this testimony and support his self-serving statements. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance of trial counsel.

### f.      Failure to Challenge OVs and Guidelines Scoring

As part of habeas ground III, Petitioner contends that counsel was ineffective for not challenging the scoring of OVs 6, 7, and 10, and for not raising the *Alleyne*/*Lockridge* argument set forth *supra*. (ECF No. 2, PageID.47–49.)

First, Petitioner's suggestion that counsel failed to object to the scoring of OV 6 is patently belied by the record. The sentencing transcript indicates that the prosecutor challenged the initial scoring of OV 6, arguing that it should at least be scored at 25 points. (ECF No. 12-8, PageID.1103.) Petitioner's counsel vigorously argued against that scoring. (*Id.*, PageID.1105–1106.) Ultimately, the trial court found in favor of the State and scored OV 6 at 25 points. (*Id.*, PageID.1107.) Petitioner fails to explain what more counsel should have raised while objecting to that scoring.

Petitioner does not explain what arguments counsel should have raised with respect to OVs 7 and 10. It appears that Petitioner faults counsel for not objecting to the scoring of those OVs premised upon "judge-found facts" in violation of the Sixth Amendment. However, at the time of Petitioner's sentencing in 2014, there was no basis for counsel to assert that the court's scoring of the OVs violated Petitioner's Sixth Amendment rights in anyway. *Lockridge* had not yet been decided, and in 2013, after *Alleyne* was decided, the Michigan Court of Appeals had concluded that *Alleyne* prohibited only judicial factfinding to determine a mandatory minimum sentence; it had no impact on judicial factfinding for purposes of scoring the sentencing guidelines to produce a minimum range for an indeterminate sentence. *See Herron*, 845 N.W.2d at 539. At that time, the Sixth Circuit had also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent. *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory statutory minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors."). Any argument by trial counsel otherwise at Petitioner's sentence would have

49

been rejected by the trial court. Petitioner, therefore, is not entitled to federal habeas relief with respect to this assertion of ineffective assistance of trial counsel.

### g.   Failure to Object to Jury Instructions

As part of habeas ground IV, Petitioner contends that counsel was ineffective for failing to object to the jury instructions for attempted murder. (Pet., ECF No. 1, PageID.11.) According to Petitioner, "[f]ailing to make certain that the jury instructions set forth all of the elements of the offense falls below any standard of reasonableness." (ECF No. 2, PageID.53.) Petitioner also contends that he was prejudiced by counsel's failure to object because there was insufficient evidence to suggest that Petitioner was trying to strangle Mrs. MacKenzie.

Petitioner raised this claim in conjunction with his underlying due process challenge to the jury instructions in his Rule 6.500 motion, and it was rejected by the state courts. Specifically, the court of appeals stated:

> For two reasons, we reject [Petitioner's] all-purpose use of ineffective assistance of counsel to enable review of the instructional error on collateral review. First, [Petitioner] has not developed a record that offers any explanation of trial counsel's acceptance of the jury instructions, so we are in no position to determine whether trial counsel's assent to the proposed jury instructions should be regarded as an appropriate strategic decision. "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived that issue." *People v Davis*, 250 Mich. App. 357, 368; 649 N.W.2d 94 (2002). Because "[f]ailing to request a particular jury instruction can be a matter of trial strategy[,]" *People v Dunigan*, 299 Mich. App. 579, 584; 748 N.W.2d 899 (2013), and "'defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy,'" *Davis*, 250 Mich. App. at 368 (citation omitted) [Petitioner's] failure to develop a record regarding his trial attorney's reason for assenting to the jury instructions precludes a determination on collateral review that his trial counsel rendered ineffective assistance. *Id.* Second, [Petitioner] has not carried his burden of establishing that his appellate counsel rendered ineffective assistance by failing to challenge on direct appeal either the instructional error itself or the constitutional ineffectiveness of trial counsel in assenting to the defective jury instruction. We must start from "the presumption that [defendant's] appellate counsel's decision constituted sound strategy[,]" *People v Uphaus*, 278 Mich. App. 174, 186; 748 N.W.2d 899 (2008), and recognize that an appellate attorney "may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *Id.* at 187. In this case, [Petitioner] has offered

> nothing to overcome the governing presumption. As we have noted, "to permit proper review in cases where appellate counsel has pursued an appeal as of right and raised nonfrivolous claims, the defendant must make a testimonial record in the trial court in connection with a claim of ineffective assistance of appellate counsel." *People v Reed*, 198 Mich. App. 639, 647; 499 N.W.2d 441 (1993). [Petitioner] has done no such thing in this case, so he has not established "good cause" under MCR 6.508(D)(3)(a) for failing to raise the instructional error on direct appeal.

*MacKenzie*, 2022 WL 2181992, at *3.

Petitioner has not demonstrated that counsel's failure to object to the jury instruction at issued prejudiced him in any way. As discussed *supra* in Part III.C, the prosecution presented sufficient evidence to permit the jury to convict Petitioner of attempted murder despite the omission of part of the jury instructions.

Moreover, to build a defense to attempted murder by conceding that one committed the crime of assault with intent to murder would provide nothing more than a Pyrrhic victory. Assault with intent to murder, like attempted murder, is a Class A felony. Mich. Comp. Laws § 777.16d. Petitioner's sentence would be the same. Petitioner has not shown how he would be any better off if the assault with intent to murder part of the attempted murder instruction would have been included. Petitioner, therefore, has not shown that the state courts' rejection of this claim was contrary to, or an unreasonable application of, *Strickland*, and so he is not entitled to relief with respect to this assertion of ineffective assistance.

### h.    Failure to Seek Suppression of Statements and Evidence

Petitioner next faults trial counsel for failing to file a motion to suppress. (Pet., ECF No. 1, PageID.14.) In his brief supporting his § 2254 petition, Petitioner avers that counsel should have filed a motion to suppress the statements Petitioner made "to police officers in the early morning hours of November 5, 2013." (ECF No. 2-1, PageID.67.) Petitioner avers that a "reasonable person in [his] situation who was approached by the police and told that he *had* to answer questions would not have felt they were at liberty to end the interrogation and leave." (*Id.*) In his motion to amend,

51

Petitioner asserts further that counsel should have also sought suppression of "admission of the police audio recording, hair[,] and will." (ECF No. 19, PageID.3429.)

Petitioner challenged counsel's failure to seek suppression of Petitioner's statements to police on direct appeal, and the court of appeals summarily rejected his claim, stating:

> Therefore, because [Petitioner] was not subject to custodial interrogation, *Miranda* was not implicated, *id.*, and defense counsel was not ineffective for failing to move to suppress [Petitioner's] statements. *See People v. Riley,* 468 Mich. 135, 142; 659 N.W.2d 611 (2003) ("[i]neffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.").

*MacKenzie*, 2016 WL 1680487, at *6. For the reasons set forth *supra* in Part III.D.3, as a matter of federal law, the Court has agreed with the court of appeals that Petitioner was not subjected to custodial interrogation and, therefore, *Miranda* was not implicated. The court of appeals' rejection of Petitioner's ineffective assistance claim is neither contrary to nor an unreasonable application of *Strickland*, as "omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley,* 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley,* 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Accordingly, Petitioner is not entitled to habeas relief with respect to his assertion that counsel was ineffective for failing to seek suppression of Petitioner's statements and the audio recording thereof.

Petitioner challenged counsel's failure to seek suppression of the hair and will in his Rule 6.500 motion. (ECF No. 12-12, PageID.1296–1303.) As discussed *supra*, the trial court concluded that the hair and will were relevant and admissible under Michigan Rule of Evidence 403. (ECF No. 13-1, PageID.1455.) The court also rejected Petitioner's Fourth Amendment challenge to seizure and admission of the will, stating:

> [Petitioner] claims that the will that was found in his pocket the night of the incident during a pat down should be suppressed as it was not reasonable to believe that a letter felt through a pocket was believed to be contraband. The [p]rosecutor

counters that considering the call placed to 911 and the character of the victim, it was reasonable for the officer to conduct a pat down search and confiscated any items believed to be contraband based upon the feel of the object in the search. He further argues that it is irrelevant that the item was later determined not to be contraband. This Court agrees with the People that the officer was reasonable in conducting the search and, in that moment, being concerned that [Petitioner] was carrying contraband. Based upon the "plain feel" doctrine set forth in *People v. Champion*, 452 Mich. 92 (1996), this Court finds the officer had probable cause to seize the will when it appeared to him, from the pat down, that it could be contraband.

(*Id.*)

With respect to any assertions by Petitioner that counsel should have sought suppression of the hair and will under state law, the state court's determination that such evidence was admissible under Michigan Rule of Evidence 403 binds this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Moreover, as discussed *supra*, Petitioner has not demonstrated that the admission of this evidence violated his due process rights in any way. In these circumstances, Petitioner cannot demonstrate that counsel's failure to seek exclusion of the hair and will under state evidentiary principles, as well as due process principles, prejudiced him in any way.

With respect to Petitioner's assertion that counsel should have sought suppression of the will because its seizure violated the Fourth Amendment, the Supreme Court has noted that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir.

53

2019). Accordingly, Petitioner's ineffective assistance claim requires consideration of the merits of Petitioner's Fourth Amendment claim and, to the extent that Petitioner's Fourth Amendment claim lacks merit, his ineffective assistance claim necessarily fails.

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). There are three types of allowable encounters between law enforcement and citizens: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Smith,* 594 F.3d 530, 535 (6th Cir. 2010).

With respect to an investigatory detention, officers are permitted to conduct a pat-down search of the suspect to determine whether he or she is armed and, therefore, may pose a danger. *See Terry v. Ohio*, 392 U.S. 1, 27, 30–31 (1968). The purpose of such a search, also referred to as a *Terry* frisk, "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable." *Adams v. Williams*, 407 U.S. 143, 146 (1972). During such a search, an officer may lawfully seize contraband if the officer feels an object and immediately recognizes the incriminating character of the contraband due to its contour or mass. *See Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993) (formulating a "plain feel" doctrine akin to the "plain view" doctrine justifying warrantless seizures of contraband). However, if a frisk extends beyond what is "necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will

be suppressed." *United States v. Pacheco*, 841 F.3d 384, 394 (6th Cir. 2016) (quoting *Dickerson*, 508 U.S. at 373).

Here, Petitioner does not take issue with the pat-down search itself. Instead, he contends that it was not immediately apparent to the officers who conducted the pat-down search that the will constituted contraband. (ECF No. 16, PageID.3407.) Petitioner argues that officers "had no idea what type of paper was in [Petitioner's] pocket [and] no idea what was on the paper without opening the envelope and reading its contents." (*Id.*)

Clearly, the envelope that contained the will turned out not to contain contraband. However, even if the Court assumes that counsel should have filed a motion to suppress the seizure of the will as violative of the Fourth Amendment, Petitioner has not demonstrated that he was prejudiced by counsel's failure to do so in any way. Even if officers had not seized the will during the pat-down search, they would have ultimately found it during the booking process after arresting Petitioner. Moreover, in light of the overwhelming evidence against Petitioner, Petitioner does not explain, and the Court does not discern, how exclusion of the will at trial would have led the jury to return a different verdict.

In sum, Petitioner has not demonstrated that the trial court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland* and *Kimmelman*. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance of trial counsel.

### i.      Failure to Request Directed Verdict

Petitioner also faults trial counsel for not moving for a directed verdict after the prosecution rested its case. (Pet., ECF No. 1, PageID.14.) Petitioner suggests that counsel should have based a motion for a directed verdict on the fact that the prosecution's evidence showed only that Petitioner attempted to snap his ex-wife's neck, not strangle her. (ECF No. 2, PageID.72.) Petitioner avers

that it is clear that he could not be found guilty of attempted murder "based solely on the acts of 'trying to break her neck.'" (*Id.*)

In its order denying Petitioner's Rule 6.500 motion, the trial court rejected Petitioner's claim, asserting that from the evidence produced during trial, it was "reasonable for a jury to conclude that [Petitioner] did attempt to kill the victim and that he intended to do so." (ECF No. 13-1, PageID.1450.) Moreover, in its opinion affirming the denial of Petitioner's Rule 6.500 motion, the court of appeals concluded that "the trial record contains strong evidence that [Petitioner] tried to kill his estranged wife by strangling her." *MacKenzie*, 2022 WL 2181922, at *4.

During trial, a paramedic testified that when he arrived on scene, Petitioner's now ex-wife complained about pain in her neck. (Trial Tr. II, ECF No. 12-5, PageID.653.) She told the EMT that it was hard to breathe. (*Id.*, PageID.655.) Petitioner's now ex-wife testified that when the assault began, Petitioner "started twisting [her] head and [her] neck," asserting pressure like he was trying to break her neck. (*Id.*, PageID.676.) She also testified that Petitioner choked her. (*Id.*, PageID.678.) On cross-examination, Petitioner's counsel asked his now ex-wife if she was "saying that [she] never told Trooper Sysko that Steven tried to choke you." (Trial Tr. III, ECF No. 126-, PageID.826.) In response, Mrs. MacKenzie said: "Yeah, I did tell him, yes. I believe he asked me that question and I responded, yes, just like I did with the 911 operator because for a brief period of time he did choke me." (*Id.*) Petitioner's now ex-wife also noted that when she was interviewed by Detective Clute, she clarified that "[she] did get choked but that wasn't the primary method that he was using to kill me. He did that for just a brief period of time. So when people were asking me, did he choke you, the answer was yes." (*Id.*, PageID.830.)

This testimony was sufficient to allow the jury to infer that Petitioner had attempted to kill his now ex-wife by strangling her, which, as noted by the court of appeals, "is an act that falls within the heartland of the crime of attempted murder." *MacKenzie*, 2022 WL 2181922, at *4 (citing Mich. Comp. Laws § 750.91). Accordingly, counsel had no hope of prevailing on a motion for a directed verdict, and "[n]o prejudice flows from the failure to raise a meritless claim." *See Mahdi*, 522 F.3d at 638. Petitioner, therefore, is not entitled to relief with respect to this claim of ineffective assistance.

### 3.    Ineffective Assistance of Appellate Counsel

Petitioner next faults appellate counsel for "failing to address the arguments contained in this brief, waiving oral argument, not filing a motion for new trial in the trial court, and not advising [Petitioner] of his right to file his own [*pro per*] brief." (ECF No. 2, PageID.73–74.) Petitioner raised ineffective assistance of appellate counsel in his Rule 6.500 motion, and the trial court summarily denied that claim. (ECF No. 13-1, PageID.1455.)

As an initial matter, Petitioner is mistaken that appellate counsel failed to raise all of the arguments Petitioner now asserts in his federal habeas petition. On direct appeal, appellate counsel asserted claims of ineffective assistance of trial counsel, arguing that trial counsel was ineffective for having the *nolo contendere* plea withdrawn without Petitioner's consent, for failing to explain the sentencing guidelines properly to Petitioner, and for not seeking suppression of Petitioner's statements. (ECF No. 13-2, PageID.1510.) Thus, any argument by Petitioner that appellate counsel did not raise those specific issues is plainly belied by the record.

As discussed *supra*, the Court has concluded that Petitioner's claim that he was sentenced pursuant to a now-unconstitutional mandatory guideline scheme, in violation of the Sixth Amendment, *Alleyne*, and *Lockridge*, has merit. Arguably, this issue was likely clearly stronger than the issues appellate counsel chose to present on direct appeal. *See Smith*, 528 U.S. at 289.

Given that Petitioner's direct appeal was still pending when *Lockridge* was decided, appellate counsel could have moved to supplement Petitioner's brief to raise the *Alleyne*/*Lockridge* argument. Had appellate counsel done so, the Michigan Court of Appeals would have likely remanded the matter for the trial court to conduct a resentencing or a *Crosby* hearing in accordance with *Lockridge*. The Court, therefore, concludes that appellate counsel was ineffective for failing to raise Petitioner's Sixth Amendment sentencing challenge on direct appeal, and Petitioner is entitled to federal habeas relief with respect to that claim.

With respect to the rest of Petitioner's underlying claims, as thoroughly discussed *supra*, they lack merit. Thus, "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Moreover, Petitioner's conclusory allegations concerning appellate counsel's waiver of oral argument, failure to file a motion for a new trial, and failure to inform Petitioner that he could file a *pro per* supplemental brief are insufficient to justify federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (noting that conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335–36 (6th Cir. 2012) (citing *Workman* and affirming the denial of habeas relief for conclusory claims). Petitioner provides no argument for how he was prejudiced by the lack of oral argument, nor does he provide any argument regarding the basis on which counsel should have moved for a new trial. Furthermore, Petitioner does not explain what issues he would have raised in a *pro per* supplemental brief and how his lack of knowledge concerning such a brief prejudiced him in any way.

In sum, while Petitioner is entitled to federal habeas relief with respect to his claim that appellate counsel was ineffective for not asserting a Sixth Amendment *Alleyne*/*Lockridge* argument on direct appeal, Petitioner has not demonstrated that the state courts' rejection of the rest of his ineffective assistance of appellate counsel claims is contrary to, or an unreasonable application of, *Strickland*.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

As set forth *supra*, the Court will grant Petitioner's § 2254 petition with respect to the following claims: (1) Petitioner was sentenced pursuant to a now-unconstitutional mandatory

sentencing guidelines scheme, in violation of *Alleyne v. United States*, 570 U.S. 99 (2013), and *People v. Lockridge*, 870 N.W.2d 520 (Mich. 2015); and (2) appellate counsel was ineffective for failing to raise the Sixth Amendment *Alleyne/Lockridge* issue on direct appeal. Reasonable jurists could find that this Court's assessment of those claims and the relief to be granted debatable. *See Slack*, 529 U.S. at 484. The Court, therefore, will grant a certificate of appealability with respect to these grounds so that Petitioner may challenge any aspect of the relief granted. With respect to all other grounds for relief, the Court finds that reasonable jurists could not conclude that this Court's dismissal of such claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability as to all other grounds for relief.

## Conclusion

For the reasons set forth above, the Court concludes that Petitioner is entitled to federal habeas relief with respect to the following claims: (1) Petitioner was sentenced pursuant to a now-unconstitutional mandatory sentencing guidelines scheme, in violation of *Alleyne v. United States*, 570 U.S. 99 (2013), and *People v. Lockridge*, 870 N.W.2d 520 (Mich. 2015); and (2) appellate counsel was ineffective for failing to raise the Sixth Amendment *Alleyne/Lockridge* issue on direct appeal. The Court, therefore, will enter a judgment that grants Petitioner's § 2254 petition with respect to those grounds. The judgment will deny Petitioner's § 2254 petition with respect to all other grounds. The judgment will also direct that Petitioner's sentence for attempted murder be vacated, and the Court will be directed to either conduct a full re-sentencing or a *Crosby* hearing in accordance with *Lockridge*. The Court will also enter an order granting a certificate of

appealability as to the two claims noted above and denying a certificate of appealability as to all other grounds for relief.


Dated: June 18, 2024                          /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE